Filed 9/12/14  Kaabinejadian v. Miller CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| MASSOUD KAABINEJADIAN, | |
| Plaintiff and Appellant, | E057627 |
| v. | (Super.Ct.No. CIVRS1204201) |
| KATHALEEN E. MILLER, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of San Bernardino County.  Gilbert G. Ochoa, Judge.  Affirmed.

Massoud Kaabinejadian, in pro. per., for Plaintiff and Appellant.

Leser & Cantrell, David Cantrell and Matthew J. Kraus for Defendant and Respondent.

# I

# INTRODUCTION

Plaintiff and appellant Massoud Kaabinejadian appeals from a judgment entered after the trial court granted a special motion to strike (Code Civ. Proc., § 425.16)[1] brought by defendant Kathaleen Miller.  (§ 904.1, subd. (a)(13).)  Plaintiff filed this lawsuit for abuse of process and invasion of privacy against Miller, a lawyer, based on actions she took while representing her clients in a workers' compensation proceeding. Plaintiff has two principal claims:  first, that Miller made a misrepresentation in a submission to the WCAB[2] regarding plaintiff's purported attempt to assault a witness; and, second, that Miller used a medical subpoena to obtain medical records in violation of federal privacy law.[3]

We hold that Miller's conduct was protected litigation activity and plaintiff could not establish the probability of success on his claims.  We do not have jurisdiction to consider Miller's counter-argument about the award of attorneys' fees and costs because the record does not show that Miller filed a cross-appeal.  (*Golden Gate Land Holdings LLC v. East Bay Regional Park District* (2013) 215 Cal.App.4th 353, 363, citing *Estate of Powell* (2000) 83 Cal.App.4th 1434, 1439.)  We affirm the judgment.

---

[1]  All undesignated statutory references are to the Code of Civil Procedure.

[2]  Workers' Compensation Appeals Board.

[3]  Health Insurance Portability and Accountability Act ("HIPAA"), 42 United States Code section 1320d et seq.

## II

## FACTUAL AND PROCEDURAL BACKGROUND

### A. The Workers' Compensation Claim

Between January and July 2006, plaintiff was an at-will employee for Rabobank. In September 2006, plaintiff filed a workers' compensation claim—based on work-related stress and discrimination—which was ultimately denied because plaintiff's length of employment was only 177 days and less than six months. (Lab. Code, § 3208.3, subd. (d).)

Miller served as opposing counsel, representing Rabobank and its workers' compensation insurer. On behalf of her clients, Miller contended plaintiff was properly terminated for aggression toward coworkers and creating a hostile work environment. Miller served a medical record subpoena on plaintiff's medical provider seeking information about plaintiff's alleged injuries. After plaintiff's claim was denied, Miller also prepared and filed a response to plaintiff's WCAB petition for reconsideration.

### B. The Complaint

In May 2012, plaintiff filed a complaint for abuse of process and breach of privacy against Miller. For the first cause of action, he alleged that Miller's answer to his petition for reconsideration falsely stated that plaintiff had tried to assault a witness, Cheryl Walker, during the workers' compensation hearing on May 18, 2011. Plaintiff asserted that Miller had made the statements in the answer to retaliate against him. For the second cause of action, plaintiff alleged that Miller had wrongfully subpoenaed his medical records, again as retaliation.

*C. The Anti-SLAPP Motion*

In July 2012, Miller filed a special motion to strike pursuant to Code of Civil Procedure section 425.16, asserting that Miller's litigation conduct constituted participation in a protected activity and plaintiff could not demonstrate a probability of success because Miller's conduct was subject to the litigation privilege afforded by Civil Code section 47 ("section 47").

Miller submitted a declaration, describing the facts of her representation during the workers' compensation proceeding—including that she had subpoenaed medical records from plaintiff's treating physician and that she had witnessed plaintiff try to assault Walker, the human resources director for Rabobank. In her answer to plaintiff's petition, Miller stated that plaintiff had demonstrated "anger and aggressive behavior" at the workers' compensation hearing: "Following the conclusion of testimony by Cheryl Walker . . . the applicant sprang to his feet and attempted to assault the witness. But for the actions of Mr. Miguel Martinez (Pinkerton Consulting and Investigations) and Mr. Chris Solberg (California Highway Patrol), it appeared he would have physically assaulted Mrs. Walker. She fled the courtroom in tears sheltered by Mr. Martinez, while Officer Solberg confined the applicant to his chair."

In his opposing declaration, plaintiff described Walker's purported discriminatory treatment of him. He also set forth an account of the years spent litigating his workers' compensation claim. He contended that Miller had obstructed his discovery efforts, mishandled his medical records, and interfered with his Independent Medical Examination (IME). Plaintiff made numerous efforts to have Miller held in contempt and

4

sanctioned. Plaintiff vehemently disputed Miller's account of his purported assault on Walker. He denied he was restrained, confined, admonished or criticized for his behavior at the hearing. The recorded minutes for the hearing contain no mention of the attempted assault. Plaintiff asserted that Officer Solberg was prepared to testify in favor of plaintiff. Plaintiff also described his objections to Miller obtaining the records of his treating physician, Dr. Jeffrey Pearson, and disseminating them to non-medical personnel.

After a hearing, the trial court granted defendant's anti-SLAPP motion based on a determination that Miller "had met her burden of showing that the activity alleged is protected under section 425.16" and that the litigation privilege (section 47) bars plaintiff's claims.

*D. Attorneys Fees Award and Judgment*

After the court granted the anti-SLAPP motion, Miller filed a motion for statutory attorneys fees pursuant to section 425.16, subdivision (c)(1), requesting attorneys fees in the amount of $7,851 and costs in the amount of $555. The court ordered plaintiff to pay attorneys fees in the amount of of $4,505 and costs in the amount of $495. The court entered judgment, including fees and costs, in Miller's favor.

III

SECTION 425.16

"A SLAPP suit—a strategic lawsuit against public participation—seeks to chill or punish a party's exercise of constitutional rights to free speech and to petition the government for redress of grievances." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055.) Section 425.16, the anti-SLAPP statute, allows a party to bring a special motion

5

to strike a meritless SLAPP suit at an early stage of the litigation. (*Rusheen*, at pp. 1055-1056; *Dwight R. v. Christy B.* (2013) 212 Cal.App.4th 697, 708-709 (*Dwight R.*).)

The court follows a two-step process in determining whether a cause of action constitutes a SLAPP. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88; § 425.16, subd. (b)(1) (*Navellier*).) The court first determines whether the defendant has made a threshold showing that the challenged cause of action "aris[es] from" protected speech or petition activity. (*Navellier*, at p. 88.) This showing is made if the "act" underlying the challenged cause of action fits one of the four categories of protected activities described in section 425.16, subdivision (e). (*Navellier*, at p. 88.)

If the court finds the defendant has met this threshold burden, it then determines whether the plaintiff has demonstrated a probability of prevailing on the merits of the plaintiff's claim. (*Navellier*, *supra*, 29 Cal.4th at pp. 88-89.) To meet this burden, the plaintiff must demonstrate """"that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited."'' [Citations.] [¶] Only a cause of action that satisfies both prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning and lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Id.* at p. 89.)

"We review an order granting or denying a special motion to strike de novo. (*South Sutter, LLC v. LJ Sutter Partners, L.P.* (2011) 193 Cal.App.4th 634, 657.) That is, we independently determine whether the challenged cause or causes of action arise from protected activities, and if so whether the plaintiff has demonstrated a probability of

6

prevailing on the claims. (*Maranatha Corrections, LLC v. Department of Corrections & Rehabilitation* (2008) 158 Cal.App.4th 1075, 1084.)" (*Dwight R.*, *supra*, 212 Cal.App.4th at p. 710; *Flatley v. Mauro* (2006) 39 Cal.4th 299, 325 (*Flatley*).)

A.  *Protected Activity*

Plaintiff contends Miller did not meet her burden to demonstrate that the claims against her are based on protected activities.  We disagree.  A cause of action "aris[es] from" protected activities if the act underlying the claim is "itself " an act in furtherance of the right of free speech or petition.  (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78; § 425.16, subd. (b)(1).)  In determining whether a claim is based on protected activity, we disregard the labeling of the claim and examine its "'principal thrust or gravamen,'" or "'[t]he allegedly wrongful and injury-producing conduct . . . that provides the foundation for the claim.' [Citation.]" (*Hylton v. Frank E. Rogozienski, Inc.* (2009) 177 Cal.App.4th 1264, 1272, italics omitted.)  We consider the pleadings together with the supporting and opposing affidavits, "stating the facts upon which the liability . . . is based." (§ 425.16, subd. (b)(2); *Navellier*, *supra*, 29 Cal.4th at p. 89.)

The protected activities described in subdivision (e)(2) of section 425.16 include statements or writings made "in connection with an issue under consideration or review by a . . . judicial body, or any other official proceeding authorized by law . . . ." (§ 425.16, subd. (e)(2); see *Kibler v. Northern Inyo County Local Hospital Dist.* (2006) 39 Cal.4th 192, 198;)  These protected activities include acts "'preparatory to or in anticipation of the bringing of an action or other official proceeding.'" (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115 (*Briggs*); § 425.16, subd.

7

(e)(2); *Comstock v. Aber* (2012) 212 Cal.App.4th 931, 941-942.)  "In the context of determining whether a case comes within Section 425.16, the Supreme Court has held that the constitutional right to petition includes the basic act of seeking administrative action."  (*Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2006) 136 Cal.App.4th 464, 474.)  In the context of determining whether a case comes within section 425.16, the Supreme Court has held that the constitutional right to petition includes the basic act of seeking administrative action.

The activity underlying plaintiff's complaint is Miller's conduct as defense attorney in a workers' compensation case.  As such, plaintiff's complaint is based on acts preparatory to or in anticipation of official proceedings.  (§ 425.16, subd. (e)(2); *Briggs*, *supra*, 19 Cal.4th at p. 1115; *Comstock v. Aber*, *supra*, 212 Cal.App.4th at pp. 941-942.)  Miller's conduct is protected activity.  Miller made a threshold showing that plaintiff's claims arise from protected activity.  (*Navellier*, *supra*, 29 Cal.4th at p. 88.)

B. *Exception for Illegal Activity*

Plaintiff additionally argues that Miller's conduct was not a protected activity because it was unlawful.  (*Flatley*, *supra*, 39 Cal.4th at pp. 324-328; *Lefebvre v. Lefebvre* (2011) 199 Cal.App.4th 696, 703-704.)  Unlawful or criminal activities do not qualify as protected speech or petition activities under the anti-SLAPP statute.  (*Flatley*, at p. 317; *Lefebvre*, at p. 704.)  "[T]he defendant may invoke the anti-SLAPP statute *unless* the activity is unlawful as a matter of law.  [Citation.]  An activity may be deemed unlawful as a matter of law when the defendant does not dispute that the activity was unlawful, or

8

uncontroverted evidence conclusively shows the activity was unlawful." (*Dwight R.*, *supra*, 212 Cal.App.4th at pp. 711-712, citing *Flatley*, at p. 317; *Cross v. Cooper* (2011) 197 Cal.App.4th 357, 383-384.)  The trial court did not err in holding the illegality exception was inapplicable to plaintiff's cause of action for breach of privacy because Miller does not concede—and the uncontroverted conclusive evidence does not establish—her conduct was illegal.

California courts have created a very narrow exception to the anti-SLAPP statute that does not provide protection for criminal conduct that has been conceded or is determinable as a matter of law based on uncontroverted evidence.  For example, in *Paul for Council v. Hanyecz* (2001) 85 Cal.App.4th 1356, the court held that Paul failed to meet the first prong of the test because section 425.16 does not exist to protect illegal activity.  The *Paul* court rejected the proposition that every allegation of illegality falls outside the anti-SLAPP statute.  The court relied heavily on Paul's concession of the illegality of his conduct, noting "defendants have effectively conceded the illegal nature of their election campaign finance activities for which they claim constitutional protection.  Thus, there was no dispute on the point and we have concluded, as a matter of law, that such activities are not a valid exercise of constitutional rights as contemplated by section 425.16." (*Paul*, at p. 1367.)  The court of appeal in *Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 911, held the *Paul* decision does not apply to conduct that is simply alleged to have been illegal:  "If that were the test, the statute (and the [litigation] privilege) would be meaningless."

In *Flatley*, the California Supreme Court said more elaborately:  "We conclude,

9

therefore, that where a defendant brings a motion to strike under section 425.16 based on a claim that the plaintiff's action arises from activity by the defendant in furtherance of the defendant's exercise of protected speech or petition rights, but either the defendant concedes, or the evidence conclusively establishes, that the assertedly protected speech or petition activity was illegal as a matter of law, the defendant is precluded from using the anti-SLAPP statute to strike the plaintiff's action.  In reaching this conclusion, we emphasize that the question of whether the defendant's underlying conduct was illegal as a matter of law is preliminary, and unrelated to the second prong question of whether the plaintiff has demonstrated a probability of prevailing, and the showing required to establish conduct illegal as a matter of law—either through defendant's concession or by uncontroverted and conclusive evidence—is not the same showing as the plaintiffs second prong showing of probability of prevailing." (*Flatley*, *supra*, 39 Cal.4th at p. 320.)  Thus, the test for illegality is whether (1) the defendant has "conceded" illegality, or (2) the "uncontroverted and conclusive evidence" establish illegality as a matter of law.  (*Ibid.*)

These cases teach that—for the illegality exception to apply—Miller must have conceded her conduct was illegal.  Miller has never conceded her conduct relating to the subpoena for Appellant's medical records was illegal.  Instead, Miller's declaration in support of the anti-SLAPP motion established that the medical subpoena she served on plaintiff's doctor was for the purpose of discovering information relating to plaintiff's alleged injuries—just as she had commonly subpoenaed medical records during her decade of experience as a workers' compensation defense lawyer.

10

Our review of the record does not find "uncontroverted and conclusive" evidence establishing Miller's actions were illegal as a matter of law. Plaintiff contends Miller committed state and federal crimes by failing to provide plaintiff notice of the medical subpoena and by obtaining and distributing the medical records to her clients. But no law or facts establish Miller's actions are illegal under *Flatley*.

Instead, Miller's actions were lawful and fully protected by the litigation privilege under section 47. A plaintiff may not avoid "the application of the anti-SLAPP statute merely by showing any statutory violation." (*Mendoza v. ADP Screening and Selection Services, Inc.* (2010) 182 Cal.App.4th 1644, 1654.) No specific statute supports the conclusion that Miller's actions are illegal under *Flatley*. Civil Code section 56.10, subdivision (b)(3), states confidential medical records can be lawfully obtained by subpoena. Provisions of HIPAA also provide for the release of medical records in response to subpoenas. (45 C.F.R. § 164.512(e), see *Snibbe v. Superior Court* (2014) 224 Cal.App.4th 184, 197-198..) The illegality exception in *Flatley* was created to prevent defendants who intentionally engage in criminal conduct from finding a protection in the anti-SLAPP statute. No such deterrence is warranted here. No uncontroverted and conclusive evidence establishes Miller knowingly or intentionally violated any part of HIPAA that would give rise to an illegality exception under *Flatley*.

Even if plaintiff established the subpoena notice was mailed to the wrong address, it would be insufficient to support the criminal illegality exception under *Flatley*. Code of Civil Procedure section 1985.3 does not state the failure to comply with its notice provisions constitutes an illegality. Any claim against Miller based on the medical

11

subpoena and alleged dissemination of the medical records is barred by section 47, the litigation privilege. (See *People v. Persolve, LLC* (2013) 218 Cal.App.4th 1267, 1277.)

D. *Probability of Success*

The second prong of the anti-SLAPP test requires plaintiff to establish a probability that he will prevail on his causes of action for breach of privacy and abuse of process. This he cannot do because section 47 offers a complete defense and he cannot establish the elements of his cause of action for breach of privacy.

The litigation privilege is also relevant to demonstrating a probability of prevailing. (*Flatley, supra*, 39 Cal.4th at p. 323.) The litigation privilege was created by the Legislature to provide an absolute privilege protecting statements made in any judicial proceeding, or any other proceeding authorized by law. The privilege is "absolute" and bars all tort causes of action except for malicious prosecution. (*Silberg v. Anderson* (1990) 50 Cal. 3d 205, 210-211.) The privilege "applies to any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is involved." (*Id*. at pp. 211-212; *Optional Capital, Inc. v. Das Corp.* (2014) 222 Cal.App.4th 1388, 1404.) Section 47 also "promotes the effectiveness of judicial proceedings by encouraging attorneys to zealously protect their clients' interests." (*Silberg*, at pp. 213-214; *Optional Capital*, at p. 1404.) Here, the litigation privilege of section 47 covers both Miller's answer to plaintiff's petition and the medical records subpoena.

Plaintiff tries to argue Miller's statements about the assault were not protected

12

because they were not logically related to the underlying litigation. But the statements were relevant to the issue of plaintiff's credibility. The brief paragraph describing plaintiff's actions during the WCAB hearing bears on plaintiff's character. Additionally, as Miller explained, her observations of the events at the hearing were necessary to give context to the WCAB's determination of plaintiff's petition. In short, Miller's statements constituted protected speech in the administrative action.

The litigation privilege also defeats plaintiff's cause of action for breach of privacy. (*Kilgore v. Younger* (1982) 30 Cal.3d 770, 782.) The medical records subpoena was issued as part of the defense to plaintiff's workers' compensation claims. Miller declared she did not use the subpoenaed material except to oppose plaintiff's claim before the WCAB. These facts are distinguishable from *Susan S. v. Israels* (1997) 55 Cal.App.4th 1290, 1293 through 1295, in which a defense attorney's review of a rape victim's medical records was not a protected "publication" under section 47 because the attorney was unauthorized and the records were used for an improper purpose. Miller was entitled to obtain plaintiff's medical records in the workers' compensation proceeding and there is no evidence of improper use.

Furthermore, no legislative history, case law, or statutory authority supports the argument that section 47 is superseded by HIPAA. Plaintiff is suing a lawyer who represented defendants in another legal proceeding by plaintiff. This is exactly the type of case the California Legislature intended the litigation privilege to protect. HIPAA does not displace section 47. Consequently, the litigation privilege should apply to the present case.

13

Plaintiff also cannot show a reasonable probability of success because he did not submit evidence of the elements of an invasion of privacy cause of action: (1) a reasonable expectation of privacy; (2) intentional intrusion into plaintiff's private affairs; (3) an intrusion that would be highly offensive to a reasonable person; (4) injury; and (5) conduct that was a substantial factor in causing injury. (*Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1.) Evidence Code Section 996 dictates there is no physician-patient privilege once the patient files litigation concerning his ailments. Plaintiff had no reasonable expectation of privacy in the subpoenaed medical records and the subpoena would not be highly offensive to a reasonable person in light of plaintiff's claim for stress-related injuries. Although plaintiff argues the subpoena was overly broad, he does not explain how the subpoena encompassed overly-broad private medical information. Therefore, plaintiff cannot establish a reasonable expectation of privacy in the subpoenaed records. Similarly, the purported "intrusion" would not be highly offensive given the circumstances of ongoing litigation.

Finally, the privacy cause of action is also barred by the one-year statute of limitations in section 340.6, for claims against lawyers "for a wrongful act or omissions, other than for fraud, arising in the performance of professional services." By its own terms, section 340.6 applies to all claims against lawyers arising from their practice of law except claims for actual fraud. (*Southland Mechanical Constructors Corp. v. Nixen* (1981) 119 Cal.App. 3d 417, 430-431, disapproved on other grounds in *Laird v. Blacker* (1992) 2 Cal.4th 606, 617; *Stoll v. Superior Court* (1992) 9 Cal.App.4th 1362, 1363; *Vafi v. McCloskey* (2011) 193 Cal.App.4th 874.) According to the *Vafi* court, section 340.6 is

14

not limited to garden variety malpractice claims. "If the Legislature wanted to limit the reach of section 340.6 to malpractice actions between clients and attorneys, it could easily have done so." (*Vafi*, at p. 882.) Section 340.6 has never been limited to malpractice claims, and has consistently been applied to various tort and contract actions including breach of contract and breach of fiduciary duty. (*Vafi*, at pp. 882-883.)

This lawsuit was filed on May 30, 2012. Plaintiff admits he received notice of Miller seeking his medical records on May 18, 2010—two years and twelve days before this lawsuit was filed. The second cause of action alleges that Miller, while providing professional services to her client, committed a breach of privacy. Plaintiff had until May 18, 2011, to bring a claim and he failed to do so. Therefore, the second cause of action for breach of privacy is barred by the statute of limitations.

IV

DISPOSITION

Miller's conduct was protected litigation activity and plaintiff did not show the probability of success on his claims. We affirm the judgment. We award Miller, the prevailing party, her costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

RICHLI
Acting P. J.

MILLER
J.

15